GEORGE COOK v. THE SMITH-LOWE COMPANY, Appellant.

**Master and servant:** NEGLIGENCE OF SERVANT: INSTRUCTIONS.   It is the duty of one employed in a coal mine to exercise reasonable care for his own safety.   In the instant case the instructions are held sufficient to make it plain to the jury that his failure to do so would preclude recovery, and also as comprehending the duty of plaintiff to notify defendant of any defective condition in the mine requiring action on its part to insure his safety.

**Same:** SUBMISSION OF ISSUES.   An instruction in an action for a mine accident directing the jury to determine whether defendant was negligent as alleged in the petition, and pointing out that failure to exercise reasonable care in furnishing plaintiff a safe entrance to his work would be such negligence as to

render defendant liable, is held, under the evidence and the issues as submitted, not to have been erroneous as submitting all grounds of negligence charged in the petition contrary to a stipulation of the parties.

**Misconduct:** ARGUMENT: NEW TRIAL. In determining the question of misconduct in argument all the circumstances under which the alleged prejudicial statements were made must be considered. In the instant case the statements of counsel are held not to have been so far outside of the record and prejudicial as to require a new trial.

**Negligence:** SUBMISSION OF ISSUE. Under the evidence the questions of defendant's negligence in failing to furnish plaintiff, a miner, a safe place to work, and of plaintiff's negligence in not discovering the unsafety of the place and notifying defendant, were for the jury.

*Appeal from Polk District Court.*— HON. JAMES A. HOWE, Judge.

MONDAY, NOVEMBER 19, 1906.

REHEARING DENIED, MONDAY, JUNE 10, 1907.

ACTION to recover damages for personal injuries received by plaintiff while at work as a miner in the coal mine owned and operated by defendant. There was a verdict and judgment for plaintiff, from which defendant appeals.— *Affirmed.*

*Carr, Hewitt, Parker & Wright,* for appellant.

*Thomas A. Cheshire,* for appellee.

MCCLAIN, C. J.— There was evidence tending to show that plaintiff, an experienced miner, had, for about a month before the happening of the accident, been engaged in mining coal in a room of defendant's mine which he had taken over from one Tracy, who had opened the room, and worked it back for about sixty-five feet from the entry, and had properly propped the roof so far as he had worked out the room; that

the roof over the track into the room had been for a portion
of the distance double-timbered, under the direction of de-
fendant's pit boss; that Tracy had notified the pit boss that a
portion of the roof over the track in the neck of the room
where there was no double-timbering, was unsafe, and should
be double-timbered; and that plaintiff was injured by the
falling of slate in the neck of the room, where defendant's
pit boss had been advised by Tracy that double-timbering
was necessary. The issues on which the case was presented
to the jury related to the duty of defendant to double-timber
at the place where the accident happened, so as to furnish
plaintiff with a reasonably safe place through which to go to
and from his work, and to plaintiff's contributory negligence
and assumption of risk.

I. Error is assigned in the giving of an instruction re-
lating to the plaintiff's alleged contributory negligence, in
which the jury was told that it was the duty of plaintiff

1. MASTER AND    while going to his work in the mine to exer-
SERVANT: neg-
ligence of       cise ordinary care for his own safety. The
servant: in-
structions.      criticism of the instruction is that it does
not call attention to the possible negligence of plaintiff in
failing to inspect the roof, to see whether or not it had be-
come defective prior to the accident. And, in the same con-
nection, it is urged that there was error in refusing a re-
quested instruction as to the duty of plaintiff to take note of
the condition of the roof, and notify the company of any de-
fective condition requiring double-timbering or other protec-
tion for plaintiff's safety. But the court did direct the jury
in the instruction given to consider the surroundings of the
plaintiff at the time of his injury, upon whom devolved the
duty of caring for the roof at the place where the accident
occurred, what plaintiff knew, or in the exercise of ordinary
care should have known, of the condition of the roof at the
place in question, and what the plaintiff did, or in the exer-
cise of ordinary care should have done, to avoid the danger.
In another instruction the duty of the plaintiff to keep his

room, including the neck thereof, securely propped was explained, and we think that, taking the instructions together, there was not a failure on the part of the court to make it plain to the jury that any negligence of the plaintiff in looking after his own safety would defeat his recovery.

The case was submitted on both sides, on the theory that the relative duties of the plaintiff and defendant with reference to the safety of the roof in the room and the neck thereof connecting it with the entry were determined by Resolution No. 4, of the agreement between the coal operators and the United Mine Workers of America for District 13, which was offered in evidence, and which is as follows:

(a) That, in accordance with the state law, the company shall furnish all necessary timbers, and the miner shall keep his room securely propped. If a miner working in a room fails to securely prop the same, or neglects to prop, as directed by the pit foreman, or carelessly shoots down the props or timbers, and a fall of slate occurs through such failure, neglect, or carelessness, he shall immediately clear his roadway of such falls of slate, and do all necessary retimbering; and, in case of his neglect to do so, the company may do such work, and charge the expense thereof to such miner. (b) In case the room has been properly timbered, as above set forth, and the roof, from any cause, becomes so heavy as to require double-timbering, the company shall, when notified by the miner, do the necessary work to protect the roadway.

The jury could not, under the issues and the theory of the case, have failed to understand that any neglect of duty on the part of plaintiff with reference to his own safety would constitute contributory negligence. The duty to advise the defendant as to the dangerous condition of the roof requiring double-timbering was merely a part of the general duty to exercise ordinary care. The instruction is not to be limited in its meaning to the particular care which plaintiff should have exercised at the very instant of the injury while going to his work, but should

have been interpreted, and we have no doubt was properly interpreted, by the jury as including the care which he should have previously exercised in advising the defendant of the dangerous condition of the roof at the place where he was injured, if it had been discovered, or in the exercise of ordinary care for his own safety could have been discovered, by the plaintiff.

II.    In another instruction the jury was directed to determine whether the defendant was negligent, and the failure of defendant to perform the duty of exercising reasonable care to furnish plaintiff a safe entrance to his place of work was pointed out as negligence which would render the defendant liable.    But it is said that the court in this instruction told the jury to determine whether defendant was negligent as alleged by plaintiff in his petition, and that three grounds of negligence were there stated, while, as a matter of fact, the court, by agreement of counsel, submitted to the jury only the question of defendant's negligence in failing to double-timber the portion of the neck of the room where plaintiff was injured.    We think, however, that, under the issues as submitted and the evidence, the general duty to make the place safe, which would arise upon notice of a dangerous condition of the roof, could have been understood by the jury only as relating to the general duty of double-timbering on notice of defective condition.    The criticism of the instruction is too refined to appeal to our judgment.    The instruction was correct in principle, and we cannot see how the jury could have been misled under the issues and the evidence as presented. There are possible states of facts conceivable, which, if they were shown in the evidence, might have been within the scope of the instruction, but not within the scope of the issues as properly submitted; but that would not be a reason for holding the instruction erroneous.    The proposition of counsel for plaintiff on the trial, which was assented to by counsel for defendant, was to withdraw all allegations concerning

2. SAME: submission of issues.

the subject of whether the company or the miner looked after the roof in the neck of the room, and all evidence of custom respecting that subject, and he requested the court to instruct the jury to disregard any such evidence on either side, leaving the liability of defendant to depend upon the question whether the neck of the room where the accident occurred should have been double-timbered. The instruction stating the issues submitted to the jury the determination of three questions involving negligence on the part of defendant: First, of failure to remove loose slate from the roof in the entry to the neck of the room; Second, of failure to double-timber the entry when requested to do so, and Third, failure to furnish plaintiff with a reasonably safe place in which to pass in going to and coming from his work. The first of these related to double-timbering, for if the loose slate was removed there would be no occasion to double-timber, and the third related generally to the safety of the place of work, as to which there was no question save as to the unsafety of the roof due to a loosening of the slate, which would require double-timbering. It seems to us, therefore, that the court did not in fact submit to the jury any question which should have been withdrawn from their consideration under the agreement of counsel. It is evident that the request of counsel for plaintiff was made for the purpose of eliminating any issue as to a custom with reference to the duty of defendant to look after the roof in the neck of the room, as distinct from the body of the room, as to which the evidence showed that the primary obligation to look after the safety of the roof was on the miner.

III. During the presentation of the case to the jury, counsel for defendant objected to a statement made by counsel for plaintiff, substantially, that "miners do not have a

3. MISCONDUCT: argument: new trial.

very large bank account," and if plaintiff worked during the time the evidence shows he did work he did not do so because he wanted to, but because he had to, and because "he had a wife and family, and he

had to get daily bread." On motion for new trial these statements of counsel were assigned as misconduct, not being based on any evidence found in the record, and the argument is that these statements were prejudicial to the defendant in getting before the jury the fact that plaintiff was a poor man and the defendant a rich corporation. Such an appeal is condemned in a number of cases decided by this court. *Blair v. Madison County,* 81 Iowa, 313; *Mackerall v. Omaha & St. L. R. Co.,* 111 Iowa, 547; *Sullivan v. Chicago R. I. & P. R. Co.,* 119 Iowa, 464. But the circumstances under which the statements complained of were made must be taken into account in determining whether the court erred in not setting aside the verdict for such alleged misconduct.

It appeared from the testimony that the injury occurred in February, and that plaintiff went back to work about the middle of July following, and from that time until the trial in November had worked during a portion of each month, so that he was wholly prevented from working during about four months, only, following his injury. There was conflicting testimony of physicians as to the extent of plaintiff's injuries, but physicians testifying in plaintiff's behalf stated that such injuries as plaintiff received would incapacitate him for labor for from six months to a year, and that his return to work when he did was an injury to him, and retarded his complete recovery. It was therefore a legitimate argument that plaintiff's return to work at the end of less than five months, before he had completely recovered after his injuries, and at a time when physical exertion would be injurious to him, should not be counted against him in determining the amount of his recovery for the injuries which he actually sustained by reason of the accident. The objection to the argument was that there was no evidence in the record as to the financial condition or situation of plaintiff, and the statement with reference thereto was an improper appeal to the jury as tending to arouse their sympathy or inflame their minds.

The court suggested that the amount of recovery would not be affected by plaintiff's financial condition, and counsel for plaintiff expressly disclaimed any intention to influence the jury as to the amount of recovery by this argument, but insisted that the reason why plaintiff returned to work when he ought not to work, and was not able to work, might properly be considered, and that it was a proper inference from facts of general knowledge that plaintiff returned to work, under the circumstances because he felt it necessary to do so in order to support his family. Under these circumstances, we think that the court properly overruled the motion for new trial so far as it was based on the ground of misconduct of counsel. It does not appear that there was any appeal to the sympathies of the jury with reference to the amount of plaintiff's recovery, but that the appeal was solely with reference to the effect to be given to certain facts appearing in evidence, and that this appeal was based on the statement, which may well be treated as within the general knowledge of everybody, that miners, in this respect like other men who labor for a living, do not have large bank accounts to rely upon. It is not a violent assumption, within general human experience, that men do not persistently pursue the business of mining, or any other business involving physical labor, unless there is some impelling necessity. While it is undoubtedly healthful to labor, men do not usually pursue an arduous occupation, involving severe physical labor, merely for the preservation of health. In short, we see no reason for interfering with the action of the trial court with reference to the alleged misconduct of counsel.

IV. It is contended for appellant that, under the evidence, there should have been a directed verdict in its favor on the general ground that no negligence of defendant with reference to the safety of the roof in the neck

4. NEGLIGENCE: submission of issue.

of the room was made out, and that plaintiff was in a better situation to discover the danger, if any, than the pit boss, who was the employé generally

in charge of the working of the mine.   Under the contract
between plaintiff and defendant, evidenced by the resolution
set out in the preceding portion of this opinion, it was un-
doubtedly the duty of the miner to call the attention of the
pit boss to any defect in the roof requiring double-timbering,
and it is conceded that the fall of the roof which injured
plaintiff could have been prevented only by double-timbering
or taking down the slate and boulders so as to render double-
timbering unnecessary, and that the duty of double-timbering
or providing against the necessity for it only arose when the
pit boss was advised of the dangerous condition.   But it ap-
peared in the evidence that Tracy, who had been working the
room in which plaintiff was injured before plaintiff took
charge of it, had called the attention of the pit boss to the
roof at the place where the accident to plaintiff subsequently
occurred, insisting that it was in a dangerous condition, and
that the pit boss had inspected it, and reached the conclusion
that it was not dangerous.   After the attention of the pit
boss had thus been called to the roof at this place, it became
the duty of the defendant, under the resolution, to do such
double-timbering as the situation required, and we think that
from that time on the responsibility for the safety of this roof
rested on defendant, and that the question was for the jury
whether, in the discharge of this duty, the defendant had been
negligent.

There was also a question for the jury as to whether
plaintiff was guilty of contributory negligence in not discov-
ering the danger, and avoiding it by again calling the atten-
tion of the pit boss to the subject.   But on neither of these
questions was the evidence so conclusive that the case could
properly be taken from the jury.   It may be that the roof
was in fact in such dangerous condition as to require double-
timbering by the defendant when the attention of the pit boss
was called to it, and yet that the plaintiff, going to work in
the room under the approval of the pit boss, without any no-
tice that his predecessor had complained of the condition of

the roof at this place, was not negligent in not making an investigation on his own account, which would have disclosed such dangerous condition.

We are satisfied that the case was properly submitted to the jury on the evidence, and that the judgment should be *affirmed.*