MIKE BRADDICH v. PHILLIPS COAL COMPANY, Appellant.

**Master and servant:** CONTRIBUTORY NEGLIGENCE: EVIDENCE. Where the evidence is conflicting the question of contributory negligence is for the jury. In this action for injury to a miner by reason of a fall of slate from the roof of the passageway leading to the room in which he worked, the evidence is held to require submission of the question of plaintiff's contributory negligence.

**Same.** Where a mine operator had agreed to timber the roof of the mine when notified by a miner that it was necessary to protect any roadway, it was his duty to timber the neck of a miner's room leading to the entry to the mine, when notified that it was dangerous; and the miner was not guilty of negligence in failing to double-timber the same, under the statute providing that a miner failing to support the roof and entries under his control shall be guilty of a misdemeanor.

**Same:** ASSUMPTION OF RISK. Although plaintiff knew that the roof sounded loose and drummy he did not assume the risk of working under it, after he had been assured by the pit boss that from his greater experience he knew that the place was safe, and had ordered him to go to work before the roof was properly supported; especially where there was evidence authorizing the jury to find that the operator had promised to provide proper supports as soon as timbers could be secured.

**Instructions:** REVIEW ON APPEAL. An objection to an instruction substantially the same as one requested by the complaining party will not be considered on appeal.

**Same:** REFUSAL OF INSTRUCTIONS. A requested instruction excluding matters which the jury should consider in any view of the case was properly refused.

*Appeal from Dallas District Court.*—HON. W. H. FAHEY, Judge.

TUESDAY, NOVEMBER 12, 1912.

SUIT to recover damages for a personal injury.  Verdict and judgment for the plaintiff.  The defendant appeals. —*Affirmed.*

*Guernsey, Parker & Miller* and *C. Woodbridge,* for appellant.

*Thos. A. Cheshire* and *H. L. Manion,* for appellee.

SHERWIN, J.—The facts, as gathered from briefs of counsel and from the record, are substantially as follows:  The plaintiff is an Austrian by birth, and thirty-six years of age. He came to America from Austria six years before he was injured, but at the time of his injury he was unable to speak fluently or to understand fully our language.  He had worked in coal mines during his residence in this country, all of such work, prior to his work for the defendant, having been done in Pennsylvania, Wyoming, and North Dakota. He commenced work for the defendant eight or nine days before he was injured.  The defendant put him to work in a room that had been driven in from the entry about fifteen or twenty feet, and, on the day that he was injured, he had extended the room so that the face of the coal was some distance farther away from the entry.  Between the entry and the room where he was at work there was what is called the "neck of the room or entry"; a narrow opening for passage and for hauling coal from the room proper.  The defendant company had not put a track from the entry to the plaintiff's room, and, at the time he was injured, he was engaged in loading coal in a car that was standing on the track in the entry at the neck of his room.  At the time of his injury, he was in this neck of the room, about four feet from the car that he was loading, and another miner was in the room bringing coal therefrom and throwing it down in the neck of the room

near the entry so that plaintiff could load it. Plaintiff was injured by the fall of slate from the roof of this neck. At the time plaintiff began work in this room, the roof that fell upon him was solid and in good condition. Some three or four days afterward, however, some slate fell in the entry, and the plaintiff then sounded the roof in this neck of his room and it then sounded "drummy" and loose. He immediately informed the pit boss of its condition and asked him to cross-timber the roof to prevent the falling of the slate, because it was impossible to hold the slate up with props. To this request the pit boss replied that they did not have any timbers, but that he would cross-timber the roof as soon as they could get the timbers. Two or three days before the accident, the plaintiff told the timberman, who had charge of this entry, of the condition of this roof, and the timberman replied that he could not put timbers up because the company did not have them. The day before the plaintiff was injured, he had another talk with the pit boss about the condition of this roof, and asked the pit boss why he did not put up some cross planks to hold the roof. The pit boss was angry and said to the plaintiff that he knew more about the coal mining business than the plaintiff did, and that he (the pit boss) knew that the place was safe, and he then said to the plaintiff, "You go in and go to work." The plaintiff testified that when the pit boss told him that his superior experience told him that the place was safe, and that it was, in fact, safe, he felt ashamed of himself because he had "been called down," and went to work, because he regarded the pit boss as more experienced in the mining business than himself.

When the plaintiff went to work in this room, the neck thereof had not been opened sufficiently to admit the passage of a mule, and it was a part of the plaintiff's work to increase the depth of the passageway by either removing more of the roof or bottom. There was evidence tending to show that he had sufficiently enlarged this neck for the needed purpose a day or two before the accident by lowering the floor thereof. The plaintiff and one of his witnesses testified that he had not

propped the roof of this neck; the plaintiff showing that props would not hold the roof, and that it was the duty of the defendant to cross-timber it. On the other hand, the defendant introduced testimony tending to show that the roof had three or four props under it in the morning of the day that it fell, and that these props had been blown out that forenoon by the plaintiff while blasting the floor loose. Plaintiff, however, and the miner who was working with him on that day, testified that no blasting was done at the time, and that no props were then in the neck of the room. It also appears that the timberman had done some timbering in this neck while plaintiff was at work there, and at his request, but that there was not sufficient cross-timbering to hold the roof.

I.   The appellant insists that the plaintiff was guilty of contributory negligence, as a matter of law, and that the court erred in refusing to so direct the jury, and erred in submitting the case to the jury. This contention is based on the following propositions, as stated by appellant in the brief of its counsel:

1. MASTER AND
   SERVANT:
   contributory
   negligence:
   evidence.

(a)   He knew for several days before the accident that the roof of his room neck was likely to fall, since he testifies it was 'awful badly loose; sounded drummy"; and was so 'heavy' that he claims to have told the pit boss 'it was impossible to prop it.'   (b)   Knowing this, he continued to work under this roof, knowing it to be wholly unsupported, believing it to be an unsafe place to work, and without attempting himself to support it.   (c)   After having fired shots in the bottom of his room neck, he returned to work under the roof in question at noon of the day of the accident, without further sounding the roof or without attempting to prop it, notwithstanding warnings, and knowing the roof to be loose and dangerous.   (d)   The plaintiff was guilty of a misdemeanor, omitting to 'securely prop and support the roof of the room under his control,' at the time of his injury, and hence guilty of contributory negligence as a matter of law.   It cannot be argued by plaintiff that there was no causal relation between his criminal omission to prop and

secure the roof of his room, since he relies upon an alleged negligent failure of the defendant to do that very thing as the sole basis of his alleged right of recovery. (e) The alleged breach by defendant of the terms of the 'Des Moines Agreement' relative to double-timbering being necessarily known to the plaintiff at and before the time of the accident, so far from excusing plaintiff's gross negligence, was in law and in fact an additional warning to him to avoid the obvious impending danger of working under the unsecured roof, and intensifies, rather than lessens, the degree of the plaintiff's negligence. (f) The alleged assurances of safety by the pit boss and timberman do not afford plaintiff a legal excuse for exposing himself to the danger in question, because (1) they were remote in point of time; (2) they were given under conditions different from those existing at the time of the accident; (3) by persons not shown to have possessed knowledge equal to the knowledge possessed by the plaintiff of the danger he was incurring in working under a roof known by him to be loose, heavy, drummy, wholly unsupported, and unsafe at the time of the accident.

And in support of these several positions the appellant relies upon decisions of this and other courts, to which we shall give further attention later in this opinion. The plaintiff insists that the question whether he was guilty of contributory negligence was one for the determination of the jury, and not for the court, for the following reasons, as stated by his counsel:

(1) The plaintiff was of Austrian birth, and was not very familiar with the English language. The record discloses that he had to have an interpreter when giving evidence in the case at bar. (2) While he had been engaged in the coal mining business for about six years prior to his injury, his experience in mining coal in Iowa and in the mine in which he was employed at the time of his injury was but seven working days. (3) The roof which fell and injured the plaintiff was in need of double or cross-timbering and became in this condition two or three days after the plaintiff began working. (4) When the plaintiff, by sounding the roof, learned that it needed double or cross-timbering,

he informed the pit boss that he wished some crossbars placed under the roof, and the pit boss told him that they did not have any timbers and would do it as soon as they got them. (5) The day before the plaintiff was hurt, the plaintiff again requested the pit boss to put in some crossplanks, and the pit boss on that day became angry and said he knew more about coal mining business than the plaintiff, and he knew that the place was safe, and he said to the plaintiff, 'You go in and go to work.' (6) When the pit boss told the plaintiff the place was safe, and for him to go in and go to work, the plaintiff was ashamed of himself and thought he would go in and go to work, because, as stated by the plaintiff, he did not want to say anything more to the pit boss because he was more experienced in the mining business than the plaintiff. (7) The pit boss talked to the plaintiff in English. (8) The plaintiff also talked to the timberman, Frank Mikus, and the timberman talked to the plaintiff in the Austrian language, but used a little different dialect from that used by the plaintiff. (9) The plaintiff requested the timberman to double-timber this place when the timberman was sitting in the neck of plaintiff's room. (10) The timberman admits that the plaintiff said to him the roof needed timbering around the neck and mouth, and the timberman set in some timber. (11) About two days before the plaintiff was injured, he told the timberman that he needed some more timbers inside, and the timberman put in one more. The timber was put in at the entrance to the neck of the room at the left-hand side of the entry by digging a hole in the coal along the rib or wall of the entry, and putting bars across the room with a prop under one end, and the other end of the crossbar was placed in a hole in the rib or the wall. This cross-timber was a crosspiece under the slate. (12) The timberman swears that the roof of the room neck needed two more timbers, and the plaintiff requested these. (13) At the time the plaintiff asked the timberman to put in these two other crosstimbers, the timberman said to him, 'I will see, I no got any timbers. I tell him I will put them in but I have not got any.' That was two or three days or something like that before the plaintiff got hurt. (14) The timberman testified that the company had enough timber on hand on top to timber this place, but he did not always get timbers when ordered. That at times they sent down timbers and they were taken to some other place, but they usually sent

timbers where they were told to, and as soon as they were told.   (15)   The testimony is conclusive that the roof at the place where it fell upon plaintiff should have been timbered and made safe by the defendant, because it required double or cross-timbering, and it was not the plaintiff's duty to do this kind of timbering.   (16)   The contract denominated 'the Des Moines Agreement,' which was marked Exhibit 'A,' and offered in evidence by the plaintiff, required the defendant to do double-timbering when it was necessary to be done, when requested by miners, and it is conceded that this agreement was binding between the plaintiff and the defendant at the time of his injury.   (17)   The plaintiff testified it was impossible to hold up the roof with ordinary upright propping.   (18)   To have attempted to put up anything else but cross-timbering would have practically closed the neck of the room.   (19)   The fact that the timberman had made two efforts toward cross-timbering the roof between the first request and the injury, and the statement of the pit boss that the roof was safe, and he knew this because of his superior knowledge, and for plaintiff to go in and go to work, followed by the shame of plaintiff because he had complained, put plaintiff off his guard and lulled him into insecurity.

Summarizing somewhat, there is evidence in the record tending to establish the following facts, and, in determining whether the plaintiff was guilty of contributory negligence, they must all be given weight and consideration:

(1)   That the roof in the neck of his room was safe when he went there to work.   (2)   That, when it became unsafe, it required double-timbering.   (3)   That the plaintiff ascertained this fact and requested the pit boss to timber.   (4) That the pit boss agreed to double-timber.   (5)   That the plaintiff notified the timberman.   (6)   That the timberman testified that he did no double-timbering.   (7)   That two days before the accident the plaintiff again notified both the pit boss and the timberman that additional double-timbering was needed in the neck of his room.   (8)   That the pit boss then told the plaintiff that his room was safe and that his (the pit boss') superior knowledge of mining and his experience in the mine caused him to know it was safe, and he

ordered and directed plaintiff to go in and go to work. (9) That the plaintiff then felt ashamed that he had formed the opinion that the place was unsafe, and went into the room and worked up to the time of his injury. (10) That the timberman testified that, during the time the plaintiff worked in the mine, he said to the timberman he wanted timber around the neck and mouth of the room, and the timberman set them in, and that two days before his injury the plaintiff said he needed some more timber inside, and the timberman put one more cross-timber in and the room neck still needed two other cross-timbers. (11) That these timbers were on top and the timberman had ordered they be sent down. (12) Add to this the further fact that the plaintiff had not worked but seven days in this mine, or in any Iowa coal field, and was not familiar with the roof, or its characteristics, in this particular mine, as was John Bennett, the pit boss, who assured him it was safe, and ordered him to go to work.

In this case at bar it is established without conflict: First. That the plaintiff did not create the danger which confronted him, the coal in the neck of the room having been removed by another, and prior to the time he was employed. Second. That the danger did not arise from any fault of the plaintiff. Third. That the duty to double or cross-timber the neck of the room was the company's duty and not the plaintiff's. Fourth. That the plaintiff and defendant had contracted that it was the company's duty on the request of plaintiff to double-timber. Fifth. It is conclusively established by the testimony that the plaintiff made the request to double-timber to both the timberman and the pit boss.

While the question whether the plaintiff was guilty of contributory negligence is a close one, we are of the opinion that it was a question that the jury should alone determine. *Nugent v. Cudahy Packing Co.,* 126 Iowa, 517; *Hardy v. C., R. I. & Pac. Ry. Co.,* 149 Iowa, 41, 26 Cyc. 1235, and cases cited; 5 Thompson on Negligence, section 5383. The question of the servant's contributory negligence, where he is ordered into the place of danger by a person in authority, is fully discussed in *Hardy v. Railway Co., supra,* and it will serve no useful purpose to again cover the ground. We think

the principle there announced is clearly applicable to the facts in this case, and that the decision fully sustains appellee's contention that the question of plaintiff's negligence was for the jury. The plaintiff had had but slight acquaintance with this mine, or, in fact, with any Iowa mine, and he did not know certainly whether the loose slate would fall, and we think it cannot be said, as a matter of law, that the danger was so imminent to the plaintiff that he should not have continued work after the pit boss, with his superior knowledge of that particular mine, had assured him that the place was, in fact, safe and had ordered him to go on with his work. In *Cook v. Smith-Lowe Coal Co.*, 135 Iowa, 31, we held the defendant liable to a new miner who had been sent into a room that required cross-timbering, which had been requested by the first miner but neglected by the company, notwithstanding the fact that the new miner had not done any propping and had not discovered that it needed double-timbering and had made no request therefor.

In that case as in this, there was an agreement between the coal operators and the mine workers that "in case the room had been properly timbered, as above set forth, and the roof from any cause becomes so heavy as to require double-timbering, the company shall, when notified by the miner, do the necessary work to protect the roadway." Here it is shown without dispute that the neck of the plaintiff's room constituted the roadway between the room proper and the entry. It therefore clearly appears that it was the appellant's duty, to double-timber the roof of this neck, and so far, at least, as that matter is concerned, that the neck of the room was under the control of the appellant, and not under the control of the plaintiff. Hence the plaintiff was not guilty of negligence under section 2491 of the Code, which provides that, if a miner "shall neglect or refuse to securely prop or support the roof and entries under his control," he shall be guilty of a misdemeanor. If it was the duty of the defendant to

2. SAME.

double-timber this neck, when notified of such necessity, and no such duty rested upon the plaintiff, it is clear that the plaintiff could not be held guilty of a misdemeanor because he did not double-timber. If it be conceded, for the pur- pose of argument, that it was the duty of the plaintiff to place props under this roof, even though they would be of no avail, it does not follow that the plaintiff should be held guilty of negligence, as a matter of law, for his failure so to do, because there is evidence, to which we have already referred, that props were in place under a part, at least, of the roof before the accident, and further that they would have been sufficient to hold the roof had they not been blown out. In *Lammey v. Center Coal Co.*, 144 Iowa, 640, relied upon by appellant, it was held that it was the duty of the miner to do the propping, and that he had failed in his duty. In *Williams v. Coal Co.*, 146 Iowa, 489, the plaintiff was injured by a falling roof in his room, and at a place where it was not the duty of the defendant to prop or timber. *Ole- son v. Coal Co.*, 115 Iowa, 74, was a case where the miner was removing a pillar of coal that had been left for the support of the roof, and it is not controlling under the facts in this case.

II. What has already been said on the question of the plaintiff's negligence is, in a great measure, applicable to the

3. SAME: as-
   sumption of
   risk.

claim that he assumed the risk of working un- der a roof that had not been properly sup- ported by the defendant. The evidence tended to show that the defendant had, in fact, put in some cross- timbers. It is undisputed that at least one had been placed near the entry, and there is also evidence from which the jury may have concluded that other cross-timbers had been put in before the accident. While the plaintiff did know that the roof sounded "loose and drummy," there was evidence, to which we have already called attention, that the plaintiff was not fully aware of, and did not appreciate, the danger after the pit boss had assured him that he knew from his greater

experience that the place was safe, and ordered him to go to work. Unless the danger was so apparent that any reasonably, cautious man would have seen and appreciated it, it should not be said, as a matter of law, that the plaintiff assumed the risk. Moreover, the jury would have been warranted in finding that the defendant promised to do the necessary timbering as soon as the timbers could be got into the mine from the top. We think there was no error in submitting this question to the jury.

III. These facts which we have recited clearly show that the question of the defendant's negligence was for the jury.

IV. The appellant's brief does not properly raise any questions as to the instructions, but we shall nevertheless notice some of the complaints made in the argument. Number 5, we think, is not open to the criticism made. The sixth instruction is, in substance, the same as the sixth request of the appellant, and, of course, no complaint thereof will now be considered. *Smith v. Railway Co.*, 38 Iowa, 173. The seventh and eighth instructions related to the plaintiff's contributory negligence, and the criticism thereof is answered by what we have already said on the subject. The tenth instruction was warranted by the evidence, and the eleventh was, we think, correct in telling the jury that it was not necessarily the duty of the plaintiff to double or cross-timber the roof of this neck. We have already discussed this question and need not repeat it.

4. INSTRUCTIONS: review on appeal.

The eleventh and twelfth requested instructions were properly refused. The last excluded material matters, which the jury would have a right to consider in any view of the case. The controlling question in this case, as presented by appellant, is the negligence of the plaintiff contributing to his injury. We have given the record very careful consideration with reference to this matter, as well as the others urged by appellant, and, while we consider the question a very close one in this

5. SAME: refusal of instructions.

case, we reach the conclusion that the question of such negligence, and its companion one, the assumption of risk, were, in the last analysis, for the jury. The judgment is, therefore, *Affirmed.*