## Spoltore v. Gilbert

*Joseph J. Zapitz*, of *Curtin & Heefner*, for plaintiff.
*Frederick E. Smith*, for defendant.

FULLAM, J., June 4, 1965.—Plaintiff fell and was injured as he entered the locker room of defendant's swimming pool, where he had been a paying patron. At the ensuing jury trial, a compulsory nonsuit was entered, and we now have for disposition plaintiff's motion to remove it.

The accident occurred in the following manner: plaintiff, then 55 years of age, arrived at the defendant's "Post Road Pool and Beach Club" in Morrisville at about 6 P. M. on June 20, 1960. He paid the required admission fee of $1.25, entered the locker room, changed into his bathing suit, proceeded to the pool area and engaged in swimming until approximately 8 P. M. Plaintiff was accompanied on this excursion by a friend and co-worker named "Johnny", not otherwise identified in the record.

After emerging from the pool, plaintiff sat on a bench nearby for about 10 or 15 minutes, until his bathing suit was almost dry. He and his companion then proceeded to the locker room to change into street clothes. The locker room was located about "25 or 30 or 40 feet" from the edge of the pool. In order to gain entrance to the men's locker room, it was necessary for plaintiff to go through a doorway into a passageway leading to his left. This passageway was about six feet wide and about 10 or 12 feet long.

"Johnny" apparently made the trip to the locker room without incident. However, after plaintiff had taken about two steps inside the door and was in the process of turning to his left down the passageway, plaintiff slipped and fell.

The following is plaintiff's description of the accident:

"Q What happened to you when you made the turn?

"A I slipped.

"Q And on what did you slip?

"A On the floor, on the wet floor, the painted floor.

"Q What kind of floor was this at the point that you slipped on?

"A Cement.

"Q Was there anything on the cement?

"A Gray paint.

"Q Did you feel the surface of the cement where you fell?

"A Yes.

"Q Tell the ladies and gentlemen of the jury what you felt with respect to the surface where you fell?

"A It was wet.

"Q Did you feel anything else—whether it was rough, or smooth?

"A It was very slippery; it was just like glass.

"Q Just like glass, did you say?

"A Very smooth.

"Q Was the whole, entire passageway smooth?

"A Yes, as far as I could see.

"Q Did you notice how much water there was at the point you fell?

"A How much what?

"Q How much water?

"A No, after I fell, I didn't take too much notice; but I know it was wet.

"Q Now, at the point that you fell, was there anything on the concrete floor, other than the water that you described?

"A Pardon?

"Q Was there anything else on the floor?

"A Paint and water.

"Q Nothing else?

"A Nothing else.

"Q Did you notice whether there were any carpets, or mats, in position at the point that you fell?

"A Nothing; not a thing."

The foregoing constitutes the only evidence as to the happening of the accident; the companion was not called as a witness.

The question thus presented is whether or not it constitutes negligence for the owner of a public swimming club to permit the floor of the passageway leading to the men's locker room to become wet and slippery. In our opinion, it does not.

While we have not been made aware of any Pennsylvania decision involving a precisely similar factual situation, the authorities from other jurisdictions are uniform in holding that, in the very nature of things, swimming pools, bathhouses, shower rooms, and the floors and walks adjacent thereto, are necessarily wet and slippery. As stated by the Florida court in Andrews v. Narber, 59 S. 2d 869 (1952) :

"It is a matter of common knowledge which should

be known to every intelligent person that walks adjacent to or leading to or surrounding a bathing pool generally have water constantly thrown upon them and are in a slippery condition."

To the same effect, see Conroy v. Saratoga Springs Authority, 259 App. Div. 365, 19 N. Y. S. 2d 538 (1940) (slippery floor in bathhouse) ; Sciarello v. Coast Holding Co., 242 App. Div. 802, 274 N. Y. S. 776 (1934) (slippery platform surrounding swimming pool) ; Nooks v. Saratoga Springs Authority, 209 N. Y. S. 2d 951 (1961) (slippery bathhouse floor) ; Anderson v. Seattle Park Co., 79 Wash. 575, 140 Pac. 698 (1914) (slippery steps leading to pool). And see 52 Am. Jur. 315, §71; 118 A. L. R. 432.

In short, it is our opinion that a wet and slippery entranceway to the locker room of a public swimming pool does not constitute an unreasonable risk of harm to the patrons. On the contrary, in view of the proximity of this passageway to the swimming pool and to the locker room containing showers, and the inevitable use of the passageway by swimmers in wet bathing suits and with wet feet, a wet and slippery floor would seem to be virtually unavoidable. Defendant cannot be charged with negligence by reason thereof.

Moreover, a patron of a recreational facility is deemed to have assumed the ordinary risks incidental to the sport in question. In Podvin v. Somerton Springs Swim Club, 406 Pa. 384 (1962), plaintiff sustained a fall while playing volleyball on a concrete volleyball court, allegedly as the result of patches of sand tracked onto the court from a nearby sandy area. The entry of a compulsory nonsuit was upheld, notwithstanding the fact that in that case there was expert testimony that it was negligent and improper to construct the court so close to the sandy play area. In the present case, there is no evidence that the layout of defendant's bathhouse, the materials used in its construction, or the

condition thereof, differed in any way from normal, accepted practice.

The decision of our Supreme Court in Oberheim v. Pennsylvania Sports and Enterprises, Inc., 358 Pa. 62 (1947), a skating rink case, lends support to our conclusion that plaintiff must be held to have assumed the risk that the floors of the area surrounding the swimming pool and the entrance to the locker room would become slippery by reason of water dripping from wet bathing suits. Although plaintiff was permitted recovery in the Oberheim case, it is clear that this was due to the fact that plaintiff's injuries resulted from a dangerous condition created by defendant's employes and not related to the use of the ice skating rink itself, or to the foreseeable consequences of the normal use of the skating rink. Significantly, the court stated, at page 68:

"It will readily be conceded that an invitee of an ice skating rink assumes the ordinary risks incidental to the sport, such as the risk of injury from falling because of imperfections and inequalities on the surface of the ice reasonably to be anticipated. . . . But, the invitee is not to be held to have assumed risks arising beyond the skating area from dangerous conditions of entrance and exit *originating from other than the ordinary and foreseeable possible effects of skating on the ice.*" (Italics supplied.)

In the present case, the "conditions of entrance and exit" clearly originated from the "ordinary and foreseeable effects" of swimming in the pool itself.

The entry of a nonsuit in the present case can probably also be sustained on principles of contributory negligence. Plaintiff did not specifically testify that he was looking or had looked to see where he was walking. In view of his testimony on depositions, which was read to him and seemingly adopted by him on cross examination at the present trial, to the effect that the light-

ing conditions were adequate, no reason appears why plaintiff should not have seen that the floor was wet and therefore probably slippery. Or, on the basis of his other testimony at the trial, to the effect that the lighting was "very dim" and he could not see whether the floor was wet or not, he might be said to have been testing an obvious danger. However, we prefer to base our decision on the lack of proof of negligence and plaintiff's assumption of risk.

The cases cited by plaintiff, involving falls and similar accidents occurring in department stores, restaurants, supermarkets and the like, correctly establish and reiterate the general principles of negligence law involved, but are readily distinguishable and need not be discussed at length. Finney v. G. C. Murphy Company, 406 Pa. 555 (1962), involved a puddle of oil on the floor of a store. Gripp v. Lit Brothers, 181 Pa. Superior Ct. 444 (1956), involved a fall on a marble floor of a department store; another customer had just dropped a bottle of oily liquid, and the store employee had inadequately attempted to clean up the mess. Cardone v. Sheldon Hotel Corporation, 160 Pa. Superior Ct. 193 (1947), involved broken glass on a dance floor, inadequately cleaned up. Sechrist v. Consolidated Market House of Lebanon, 203 Pa. Superior Ct. 271 (1964), involved a protruding nail. Penn v. Isaly Dairy Co., 413 Pa. 548 (1964), involved an accumulation of wax on a linoleum-tile floor. Obviously, none of these cases supports the contention that it is negligent to allow the floor of a passageway leading from a swimming pool to a locker room to become wet.

ORDER

And now, this June 4, 1965, for the reasons set forth in the foregoing opinion, plaintiff's motion to take off the compulsory nonsuit is denied and refused, and the prothonotary is directed to enter judgment in favor of defendant.