Henry Oltmanns, appellant, v. Leo Driver and Harry Grote, d/b/a Missouri Valley Farm Supply, et al., appellees.

No. 50172.

(Reported in 109 N.W.2d 446)

JUNE 13, 1961.

Carl V. Burbridge, of Logan, and Page & Nash, of Denison, for appellant.

Smith, Peterson, Beckman & Willson, of Council Bluffs, and Michael Murray, of Logan, for Leo Driver and Harry Grote, d/b/a Missouri Valley Farm Supply, and Raun & Franck, of Denison, for A. L. Thomas, appellees.

SNELL, J.—This is an action, tried to a jury, for personal injuries sustained by plaintiff who fell while assisting in erecting a sectional corncrib on the farm of a neighbor with whom he exchanged work. The neighbor, for whom the corncrib was being erected, was originally a party defendant but has been removed from the litigation by a directed verdict from which no appeal has been taken.

Defendants are partners, doing business as the Missouri Valley Farm Supply, engaged in selling and erecting corn storage cribs and other structures.

For the purpose of this appeal, the facts are not in material dispute.

A neighbor of plaintiff purchased from defendants a sectional prefabricated corncrib to be erected on the purchaser's farm. As a part of the purchase agreement, defendants agreed to furnish and deliver the necessary materials and one man to assist in the erection of the crib. The purchaser was to furnish two men to assist. On an exchange-of-work basis between neighbors, plaintiff assisted in the erection of the corncrib as one of the men to be furnished by the purchaser. Plaintiff was

without experience in erecting the particular kind of corncrib, and the work was done under the general supervision of Norman Salter, defendants' employee.

The prefabricated sides of the crib were first erected on the foundation and rather loosely bolted together. The looseness, for flexibility, in the siding was intentional to make easier the placing of the roof sections.

A part of the material furnished for the crib by the defendants was what was known as a "drag", a long box-like device which is put through the bottom of the crib on the floor, into which the drag feed of the corn sheller may be inserted at shelling time. The sides of this were prefabricated into a ladder-like device. They were composed of 2x3 inch pieces of wood, the same length as the diameter of the crib, with small boards, two or three inches wide, nailed from one 2x3 to the other in ladder-like fashion. The device was 16 inches wide by about 18 feet in length. One of these sections was raised to the top of the sides of the crib and used as a scaffold from one side of the crib to the other while placing the roof sections in place.

Because the length of the drag was the same as the inside diameter of the crib, it could not be properly centered but would reach the top plate of the side sections if slightly off center.

When defendants' man told plaintiff how this drag was used as a scaffold, plaintiff commented that he did not think it was safe. There was testimony that in the conversation about the safety of the scaffold defendants' man said, "It's safe enough", and "Don't worry about that, it's all right", and "that they used that on all of the ones he worked on." A 4x4 timber, previously cut to the right length to be used as a gin pole or center support, was placed under the scaffold. There was no evidence of any nailing or fastening together of any of the parts of the scaffold.

After receiving what he claims were assurances of safety, plaintiff went up to and on the scaffold. While plaintiff was standing on this scaffold assisting in the erection of the roof,

it slid or slipped from its support and fell. In jumping from the falling scaffold, plaintiff suffered a fractured ankle.

The trial court submitted to the jury the questions of master-and-servant relationship between plaintiff and defendants, negligence of defendants, imputing negligence to defendants, proximate cause and damage, and the affirmative defense of assumption of risk by plaintiff. The jury returned a verdict for defendants. We, of course, have no means of knowing wherein the jury determined failure of proof on the part of plaintiff or the establishment by defendants of the affirmative defense.

The sole and only question involved in this appeal is the sufficiency of the trial court's instruction on assumption of risk in the light of the evidence presented and the exception noted.

I. Plaintiff filed no formal written request for instructions but, at the time for objecting and excepting to instructions, excepted in the following words:

"Comes now the plaintiff, at the time allowed by the court for objecting to and excepting to the instructions and excepts to the instructions as given for the reason the same do not include an instruction in the following form or in connection with the instruction concerning the assumption of risk: 'In connection with the matter of assumption of risk, you are instructed, if you find from the evidence, that prior to the time that the plaintiff went upon the scaffolding from which he fell, he told said Norman Salter the scaffold did not appear to be safe and said Salter assured the plaintiff the scaffold could be used in safety; that he had safely used a similar one previously and the plaintiff relied upon said statement in going upon the scaffold from which he fell. Then in that event if you find that in doing so he acted as a reasonably prudent person would under similar circumstances, the plaintiff cannot be held to assume the risk of going upon such scaffold.' "

The request was treated as a timely request for an instruction and was overruled. The error claimed is in the overruling of this request and the insufficiency of the instruction as given.

The instruction as requested by plaintiff was not complete

in itself, and if given would have required amplification. The request failed to mention the exception where the danger is so patent and apparent as to be obvious to any prudent person. Braddich v. Phillips Coal Co., 159 Iowa 402, 138 N.W. 406.

Even though the requested instruction was not sufficiently complete to require its submission to the jury, it was sufficient to alert the trial court to the claim of the plaintiff and the claimed insufficiency of the instruction as given. Kuehn v. Jenkins, 251 Iowa 718, 728, 100 N.W.2d 610, 612; Lehman v. Iowa State Highway Commission, 251 Iowa 77, 85, 99 N.W.2d 404, 409.

II. The instruction as given is as follows:

"Inst. No. 9. You should next consider and decide whether or not the plaintiff has assumed the risk of any negligence on the part of said Norman Salter.

"It is a rule of law that where, because of the negligence of an employer or master, a risk or hazard is created which is greater than the usual and ordinary risks incident to the employment undertaken and where the servant or employee knows and is aware of such risk or hazard and voluntarily exposes himself to it, he is to be regarded in law as having assumed such risk and cannot recover for his resulting injury.

"As above stated, this claim is a special defense presented by the defendants and the burden of proof is upon them to establish it by a preponderance or greater weight of the evidence.

"If you find from the evidence before you that the defendants' employee or agent, Norman Salter, was negligent and that such negligence on his part resulted in the scaffolding in said building being defective so as to present an unusual or greater hazard than otherwise and you further find that the plaintiff knew and appreciated the danger of its use and with knowledge of said danger made use of said scaffolding he would in that event have assumed the risk of such negligence and he cannot recover."

The instruction as given was correct as an abstract statement of the law, but it did not give to the plaintiff the benefit to which he was entitled under the affirmative defense interposed

by defendants. The claim of the plaintiff that he did not assume the risk because of the assurances of safety of the defendants' agent was not submitted.

Braddich v. Phillips Coal Co., supra, 159 Iowa 402, 412, 138 N.W. 406, 410, was a mine accident case where the plaintiff was injured in a fall of slate from the mine roof. The evidence showed that he had complained of the appearance and condition of the roof and had asked for cross timbers. The pit boss assured the plaintiff that he knew from his greater experience that the place was safe and ordered him to go to work. "Unless the danger was so apparent that any reasonably cautious man would have seen and appreciated it, it should not be said, as a matter of law, that the plaintiff assumed the risk."

In Ehrenberger v. Chicago, R. I. & P. Ry. Co., 182 Iowa 1339, 1343, 166 N.W. 735, 736, 10 A. L. R. 1388, it is said: "The ordinary risks which the servant assumes are such as are incident to his employment, risks ordinarily incident to the service upon which he embarks, of which he has notice, or which are patent and obvious to him. To put the matter more succinctly, the servant assumes all risks, on entering the employment, which are incident to the employment, but does not assume the risks which are not usually and ordinarily incident to the employment. Carelessness and negligence on the part of the master are not incidents of the servant's employment, and the servant does not assume the risks arising therefrom."

Nikolas v. Kirner, 247 Iowa 231, 73 N.W.2d 7, involved injuries sustained by a jockey in exercising a race horse. While the conditions incident to exercising a race horse and those incident to working on a scaffold are hardly comparable, some of the statements in that case are worth noting. In that case plaintiff alleged that he was asked to exercise a dangerous animal and that the defendant had knowledge of the horse's propensities and did not warn plaintiff. Plaintiff testified that he asked defendant three times if the horse was all right and that defendant assured him, answering that the horse was "all right." We quote from page 236 of the Iowa Reports: "Plaintiff here had a right to assume that defendant-owner who had been handling this horse, with his superior knowledge of the

animal and its actions, would not expose plaintiff to unnecessary perils. This would be especially true after an assurance by defendant's statement: 'Oh, he's all right; he's okay.'

"It is a rule of common law, and has been the settled rule of this court, that the master or employer must use reasonable care and diligence to provide and maintain a reasonably safe place for his employee to work, and the same care and diligence is required of the employer to provide and maintain reasonably safe appliances, machinery, instrumentalities and tools with which to work."

On page 238 of the Iowa Reports it is said: "It is true, when it is shown that the servant knew the peril to which he was exposed the doctrine of assumption of risk applies."

In 56 C. J. S., Master and Servant, section 404, on page 1235, it is said: "A servant does not assume the risk of injury from dangers incident to his employment or from defects in the place of work, tools, machinery, or appliances where, with or without complaint by the servant, the master or his representative has assured him that the work may be done safely, or has promised to take precautions to protect the servant from injury while working, unless, as hereinafter discussed in this section, the danger of doing the work is so obvious and imminent that a person of ordinary prudence would not have attempted it, or unless there is a showing of a new condition following the assurance of the master that would bring the servant within the general rule governing assumption of risk. The rule is not limited to youthful or inexperienced servants, and it may apply where there is doubt in the servant's mind as to the safety of doing the work, or even where he knows that there is some danger. Where assurances of this character have been given, the servant is under no duty to make an inspection for the purpose of 'checking up' thereon, or for the purpose of discovering latent defects or dangers.

"On the other hand, if the servant is fully aware of the risk he runs in doing the work, or if the work is so obviously dangerous that a person of ordinary prudence would not undertake it, the servant assumes the risk in so doing regardless of any assurances of safety made by the master or his represent-

ative, notwithstanding he undertakes the work reluctantly and under a threat of dismissal for failure to do so. It has also generally been held that the servant is not relieved of the assumption of risk by assurances of safety by the master or his representatives where the servant has equal or better means of knowledge than the master."

In 56 C. J. S., Master and Servant, section 405, on page 1236, it is said: "An assurance of safety which will absolve the servant from the assumption of risk must be such that under the given circumstances it is reasonably calculated to allay his fears and subordinate his judgment to the superior knowledge of the master. It is not necessary, however, that the master shall in terms assure the servant of the safety of the work, it being sufficient if, under the circumstances, his acts and words are in effect an assurance of safety. An assurance of safety may be implied from the nature of the directions given by the master with regard to the work, and it has been held that a failure to warn of danger may be a tacit assurance that no unusual danger is to be apprehended. A mere expression of opinion does not amount to a direction which will absolve the servant from the assumption of risk otherwise assumed."

In 35 Am. Jur., Master and Servant, section 321, on page 748, it is said: "The legal situation which is presented where it appears that the inducement took the form of a command or order finds a counterpart where the evidence shows that the service which resulted in injury to the employee was performed pursuant to an assurance on the part of the employer or his representative that there was no danger of injury. Such evidence makes a case for the jury's determination. If the employee, suspecting danger, demurred to the performance of desired acts, and the employer, in order to overcome his hesitation, assured him that no danger existed, he will be entitled, as a rule, to recover. The right of recovery is especially clear where the assurance appears to have been given to induce the employee to enter a new employment, or where the performance of the desired acts required the taking of precautions and the assurance related thereto. The employee is justified in assuming

that the employer's knowledge is superior to his, and that he properly may defer thereto. If he actually believes the employer's assurance of safety, his right of recovery will not be defeated by the fact that third persons had declared the employment to be dangerous."

In 35 Am. Jur., Master and Servant, section 322, on page 749, it is said: "A right of recovery does not exist where it appears that the employee was as well situated as was the employer to discover the peril which was incurred."

In 35 Am. Jur., Master and Servant, section 323, on page 750, it is said: "Proof that the employee acted pursuant to a command or assurance on the part of the employer has an effect in the determination of the issue as to responsibility or assumption of risk. Inasmuch as commands or assurances usually proceed from persons having superior knowledge of the matter in hand, the fact that the employer commanded or assured the employee with respect to performance of the service may be taken, primarily, as creative of a presumption that the employer's knowledge of the danger of injury was superior to that of the employee; and in the absence of anything to the contrary, or where the case otherwise is left in doubt, this presumption must prevail in behalf of the plaintiff. * * *

"While there may be cases disclosing such manifest danger to the employee that the court may direct a nonsuit or verdict for the employer, it generally is held to be for the jury to determine whether the employee, in acting pursuant to an order or assurance, knew and appreciated the peril."

III. Where there is evidence to support the litigant's theory and contention, it is the duty of the trial court to submit the issue to the jury. In the case at bar there was evidence from which the jury might have found that the plaintiff relied upon assurances of safety by defendants' agent, and if there were such a finding based on such evidence, the doctrine of assumption of risk would not apply.

The plaintiff was entitled to have submitted to the jury the question of assurances of safety and reliance thereon. We find nothing in the instruction challenged, nor in the instruc-

tions as a whole, explaining these rules of law to the extent to which the plaintiff was entitled.

The case is—Reversed and remanded.

All JUSTICES concur except PETERSON, J., who takes no part.