## Podvin, Appellant, *v.* Somerton Springs Swim Club, Inc.

Argued January 12, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*William A. Goichman,* for appellant.

*Donald W. VanArtsdalen,* with him *VanArtsdalen & Pratt,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 13, 1962:

This is an appeal from a nonsuit. Podvin, a member of defendant club, brought an action in trespass to recover damages for injuries sustained by him while playing volleyball. The volleyball court was owned by defendant and was on its premises. Plaintiff wore sneakers; he was playing with five other players when the injury happened on August 30, 1958 at about 2:00 p.m.

Considering the testimony in the light most favorable to plaintiff, plaintiff testified: "Q. Will you tell us

in your own words how the accident happened? A. Well, I was playing on the left court, and the ball came over my head on the right, and I jumped up to hit the ball over the net, and when I came down I landed on sand, and my foot went under me. . . . and when it went from under me my whole body went right down on my ankle."

Plaintiff was an experienced player who had played volleyball on defendant's premises ten times that summer prior to the date of the accident. On August 30 he had waited at the volleyball court for an hour to play on a team of six persons. Obviously he must have seen the condition of the court. Moreover, plaintiff's team (of three) had played one game which lasted approximately 20 minutes. They then changed sides and early in the second game plaintiff jumped into the air and landed in the manner above described.

Plaintiff testified that he had not seen any sand on the court that day, but that when he got up after his fall his foot was scraped and there was sand embedded in his foot and his ankle and scrape marks clear up to his thigh.* The volleyball court lay adjacent or near to a children's play-sand area, and on various occasions children ran across some portion of the volleyball court with a bucket of sand, or in a bathing suit covered with sand. While there was no evidence that anyone ever observed sand falling from the children's bathing suits or buckets, it is a matter of common knowledge that sand was likely to drop therefrom. However, plaintiff admitted that almost every time he played volley ball, the ball would occasionally land in the sand area and one of the players would retrieve the ball which had sand particles on it, and necessarily sometimes on the players' shoes. Plaintiff proved by a claimed recrea-

---

* The volleyball court was concrete, which is. a product composed in part of particles of sand, and scrape marks frequently occur when a person falls on any such surface.

tion expert that in her opinion the volleyball court was constructed entirely too close to the children's play area, and both the court and the children's play-sand area should have been enclosed by a fence.

Plaintiff did not testify that the sand upon which he alighted from his jump gave way or moved or slipped or slid under his feet, or that his fall was occasioned by anything other than his own clumsiness. From all that appears in the testimony, plaintiff could and would have fallen regardless of whether he landed on the concrete or upon *sand, the amount, size and dimensions of which were never described or even mentioned.* Moreover, if sand were on the court, there was no evidence that defendant had knowledge of it or how long it had been there. If the sand created a dangerous condition which was obvious or of which defendant should have had knowledge, it is clear that plaintiff must have had equal knowledge of this obvious danger. The law is well settled that there is no duty to warn or guard a guest or a business visitor against a danger that is known or is obvious: *Brewster v. Morrone,* 395 Pa. 642, 151 A. 2d 607; *McCreery v. Westmoreland Farm Bureau Co-operative Association,* 357 Pa. 567, 55 A. 2d 399.

We are convinced that (1) plaintiff failed to prove by a fair preponderance of the evidence that defendant was negligent and that its negligence was the cause of his injury, and (2) plaintiff's evidence likewise disclosed that if his injury was caused by sand on the volleyball court which even he did not see in the hour in which he was watching and in the twenty minutes in which he was playing, he was guilty of a voluntary assumption of the risk.*

---

* How ridiculous plaintiff's contentions are is vividly apparent by applying them to other sports. If plaintiff could recover in this case under the theory that defendant was negligent in not maintaining a volleyball court as smooth and perfect as a ballroom

Order affirmed.

floor, and that plaintiff had not assumed the risks of the game, what would happen to many of the most popular sports in America? For example, it is well known to both owner and players that a dirt and a clay tennis court and an en tout cas tennis court, as well as a grass court which has recently been limed with lime, often become slippery and therefore possibly dangerous; that clay and dirt courts, as well as private tennis courts of each kind often have lines marked and held down by stapled tape; that a baseball diamond often has an outfield (especially near the fences) which is sharply rising or uneven, and an infield which is composed of dirt and pebbles which can cause physical injury to a player and/or sometimes cause the loss of a world's championship with a large financial loss to each player on the losing team. (For example, a pebble caused severe injury to the Yankee's Shortstop, Tony Kubek, and enabled the Pirates to win the World Series; and a pebble caused an easy grounder to bound over the head of Fred Lindstrom who was playing third base for the Giants and cost the Giants the World Series); and that a golf course has many fairways which are full of sharp rises, hillocks, mounds and declivities, and also precipitous and possibly dangerous sand traps, as well as "rough", which sometimes contains small holes, each and all of which are potentially dangerous and are the cause of sprained ankles, torn ligaments, pulled muscles and other physical injuries. Would any sensible person (even if he is not a participant in or lover of sports) seriously contend that a player on such a surface does not assume the risks of the game?