423 A.2d 1035

Howard Lewis RUTTER, a minor, by his parents and natural guardians, Billy Dean Rutter and Lucy Rutter and Billy Dean Rutter and Lucy Rutter, in their own right Appellants

v.

NORTHEASTERN BEAVER COUNTY SCHOOL DISTRICT, Greg Zimmerman, John Warren North and Thomas W. George, Jr.

Superior Court of Pennsylvania.

Argued April 11, 1979.

Filed Dec. 19, 1980.

Petition for Allowance of Appeal Granted March 21, 1981.

156

W. Arch Irvin, Jr., Pittsburgh, for appellants.

Nick A. Frisk, Jr., Ellwood City, for Northeastern, appellee.

Oran W. Panner and Eric Anderson, Beaver, for Zimmerman, appellee.

Thomas Minett, Pittsburgh, for North and George, appellees.

Before SPAETH, VAN der VOORT and WATKINS, JJ.

WATKINS, Judge:

This is an appeal from the Order of the Court of Common Pleas of Beaver County by the plaintiff-appellant after the court below granted the defendants a compulsory non-suit at the conclusion of the plaintiff's case.

On July 13, 1970, the plaintiff sustained a severe injury to his right eye while participating in a touch football game on

the premises of the Riverside High School. The plaintiff was a 17 year old senior at the time and had participated in the high school football program at the Riverside High School the preceding year, having been a "starter" on both offense and defense, he had played touch football in gym class and had participated in basketball games and track. The particular type of touch football in which the plaintiff was engaged on the evening of his injury was referred to as "jungle football," was strongly encouraged by the football coaches as a part of the physical conditioning program for members of the varsity football team, and was conducted under the supervision of the high school football coaches.

At trial, "jungle football" was described as basically two-hand touch football. Each team had four downs in which to score and play began at a line of scrimmage established by the place of advancement of the ball on the previous down. The offensive team had set plays and the "play" would begin when the ball was "snapped" to the quarterback. Once the ball was "snapped" into play any number of forward, lateral, or backward passes could be made without regard to one's position on the field. A player was "downed" and the play ended either when the player carrying the ball was tagged with two hands by an opposing player or when a forward pass fell incomplete. The game, therefore, was essentially a game of two-hand touch football with the one exception being that a ball carrier could throw more than one forward pass and could throw the ball forward even though he had already crossed the line of scrimmage. Plaintiff had participated in this particular brand of football on prior occasions.

On the evening of his injury plaintiff was participating in one of the aforementioned games. The coaches were also engaged in the game as participants which they would often do when extra players were needed. At the time of the injury plaintiff's team had the ball. As the plaintiff, a halfback, was preparing to block the defendant, Gregg Zimmerman, a player on the opposing team, the ball carrier lateralled the ball to the plaintiff whereupon Zimmerman,

attempting to tag plaintiff, reached out with his hands and accidentally struck the plaintiff in his eye. As a result of the injury the plaintiff suffered a detached retina in his right eye.

On April 16, 1974, plaintiff having initiated suit previously by way of a praecipe, filed his complaint in trespass against the school district, Gregg Zimmerman, and the football coaches. The matter was tried in October of 1975 and on October 2, 1975 the court below granted a compulsory non-suit to the defendants after the plaintiff had presented his case. Subsequently the plaintiff's motion to take off the compulsory non-suit was denied and plaintiff took this appeal.

■■■ The granting of a motion for compulsory non-suit is proper only where the facts adduced at trial indicate that the plaintiff has failed to put forth sufficient evidence as is necessary to support his cause of action. *McNett v. Briggs*, 217 Pa.Super. 322, 272 A.2d 202 (1970). However, the mere happening of an accident is not evidence of negligence. *Amon v. Shemaka*, 419 Pa. 314, 214 A.2d 238 (1965). In order to establish negligence plaintiff must demonstrate that the defendants breached some standard of care owed by them to him. It is also well established that a compulsory non-suit may be granted where the plaintiff admits uncontradicted facts which establish an affirmative defense. *Plummer v. Wesner*, 217 Pa.Super. 24, 268 A.2d 144 (1970).

■■■ A voluntary participant in a sporting event assumes the ordinary risks incidental to that particular sport. *Podvin v. Somerton Springs Swim Club, Inc.*, 406 Pa. 384, 178 A.2d 615 (1962). Participants in sports assume the risks of injury as part of the game. It is well known that the game of football involves a great amount of bodily contact. Plaintiff was an experienced participant in the game. By his decision to participate in the sport he obviously assumed the risks of injury inherent in any game involving contact. As such we agree with the court below in its finding that the plaintiff's own evidence conclusively established that, as a

matter of law, he is precluded from maintaining his action by the doctrine of assumption of risk.

The dissent would have us hold that because this particular brand of football contained a slight variation from the usual football rules that somehow this altered the game into an "unorthodox and dangerous form of football that carried risks not inherent in more conventional versions of the game." The record of this case fails to sustain this conclusion. While several of plaintiff's witnesses characterized the game as one with "no rules at all" these same witnesses then went on to describe the rules as set forth herein. Taking their testimony as to the facts as a whole, which we must, we cannot agree with the witnesses' conclusions to the effect that this type of game was "rougher" or more "dangerous" than other versions of the same game. Thus, we are not rejecting testimony as to facts favorable to the plaintiff, as suggested by the dissent, but merely reject the witnesses' conclusions and opinions as to the nature of the game which we are *not* bound to accept. Similarly we cannot assume that the coaches failed to supervise the game merely because they would, on occasion, participate in it. Plaintiff's own witness testified that the coaches would "whistle" a play "dead" and "if there was an argument or something, they would step in and settle the argument, or whatever". Thus, it is clear from the testimony that although plaintiff's witnesses made several characterizations about the game that these characterizations merely reflect the subjective feelings of these witnesses while the facts adduced from these same witnesses do not support their characterizations and while we are bound to accept the facts in the light most favorable to the plaintiff we need not so accept their expressions of opinion especially when they are contradicted by the facts. As discussed above, the only variations in this particular brand of touch football were that more than one forward pass could be thrown on the same "play" and that a forward pass could be thrown from beyond the "line of scrimmage". It is quite apparent that these variations in the rules of the game do change the

game. It is just as apparent that they in no way render the game any more dangerous than it is in its more conventional forms. Thus, we believe that merely because a certain brand of a sport may be "unconventional" does not necessarily render it more "dangerous" than more orthodox forms of the same sport. It is also quite apparent that plaintiff's injury was not caused by the variations in the rules of the game as the accidental striking of an eye by the hand of an opposing player is an inherent risk of any contact sport. Furthermore even casual observers of any game of "two-hand touch" football know that such games tend to be "wide open" affairs with much lateralling of the ball and risky offensive plays. It is also apparent that plaintiff's injury could have occurred just as easily in a game of "tackle football" where the play is ended only when the ball carrier is knocked off his feet rather than merely touched with two hands. Because we find that the game of football engaged in by plaintiff was no more dangerous than a conventional football game and because we find that plaintiff's injury was of the type the risk of which is inherent in any type of football contest we hold that the court below acted correctly in granting the motion for compulsory non-suit on the basis that plaintiff had assumed the risk of injury when he voluntarily and knowingly participated in the football program at Riverside and in this particular game.

Plaintiff also claims that the court below erred when it would not permit one Frank Cipriani, a former football coach, to testify as an expert witness with regard to safety equipment provided by other Pennsylvania High Schools for their football programs. The trial court had sustained defendant's objections to the introduction of this testimony.

The allowance of testimony by an expert witness is a matter within the sound discretion of the trial court. *Houston v. Canon Bowl, Inc.*, 433 Pa. 383, 278 A.2d 908 (1971). In such matters we will reverse a trial court only when it abuses its discretion. In the instant case the court below did not abuse its discretion when it refused to permit plaintiff to have the former football coach testify as an

expert. When the subject matter of proposed expert testimony relates to occurrences which are within the common experiences of the trier of fact the testimony is inadmissible. *Collins v. Zediker*, 421 Pa. 52, 218 A.2d 776 (1966). When the matter can be described to the jury and the condition evaluated by them without the assistance of a person claiming to possess special knowledge of the matter expert testimony with regard thereto is inadmissible. *Burton v. Horn and Hardart*, 371 Pa. 60, 88 A.2d 873 (1952). An expert may be required to establish a fact which is not generally known but of which he has knowledge because of his special training and experience.

However, his expert testimony must be confined to technical knowledge beyond that of the average person. *Reardon v. Meehan*, 424 Pa. 460, 227 A.2d 667 (1967). One holding himself out as an expert must not be permitted to offer his own conclusions on matters which are within the knowledge of the average person because in such a case the "expert" would be usurping the function of the trier of fact. In the instant case it is obvious that there was no need of expert testimony. It is certainly within the ability of the average person to understand the game of touch football as described in the testimony. No particular technical knowledge beyond the common understanding of the average person could have been provided by Mr. Cipriani. Whether or not protective equipment might have prevented plaintiff's injury would not be of any assistance to the trier of fact because plaintiff, when injured, was not engaged in a "tackle" football game where such equipment is worn but was engaged in a "touch" game where protective equipment is not ordinarily worn. Certainly all of this is within the comprehension of the average person and we cannot say that the court below abused its discretion in refusing to permit this testimony.

Order affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

The majority acknowledges that this is an appeal from an order refusing to take off a compulsory non-suit. Its opinion, however, fails to consider appellant's evidence by the standard appropriate to such an appeal. As a result, the majority does not recognize the lower court's error in not allowing appellant's expert witness to testify as to Pennsylvania high school football coaching standards. These failures—as I consider them to be—are especially to be regretted in a case in which the injury is the loss of sight in an eye.

-1-

"A nonsuit should be entered only in a clear case, and, on appeal from the refusal to take off a compulsory nonsuit, *the plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom* and all conflicts therein must be resolved in favor of the plaintiff." *Cushey v. Plunkard*, 413 Pa. 116, 117, 196 A.2d 295, 296 (1964) (emphasis added). The majority's failure to apply this standard is manifest from its description of the game in which appellant was hurt. According to the majority:

[T]he only variations in this particular brand of touch football were that more than one forward pass could be thrown in the same "play" and that a forward pass could be thrown from beyond the "line of scrimmage." It is quite apparent that these variations do change the game. It is just as apparent that they in no way render the game any more dangerous than it is in its more conventional forms.

Slip op. at 1038.

This description ignores important testimony favorable to appellant; indeed, it states the evidence in the light most favorable to appellee.

Appellant and two of his former schoolmates testified that although in "jungle football" a play was ended by a two-hand tag—and in that sense it was "touch football"—body blocking and tackling regularly occurred. N.T. 17–19, 58–59, 77–79. One of the schoolmates testified at some length

as to why he found "jungle football" a rougher game than touch football. N.T. 78. When this testimony is recognized, instead of ignored, the proper statement of the case is that the testimony, viewed in the light most favorable to appellant, establishes that "jungle football" involves risks well beyond those normally associated with touch football.

I am unwilling to assume that appellant was aware of the special risks of "jungle football" and by his participation consented to them. But even if appellant was aware of the risks, because he had played "jungle football" before, slip op. of lower court at 2, I am not at all persuaded that he voluntarily assumed the risks.

In *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 88, 394 A.2d 546, 552 (1978), the Supreme Court stated that "[a]ssumption of the risk as a defense requires a demonstration that, in fact, plaintiff knew of the danger created by defendant's negligence and explicitly, or implicitly accepted the risks *created by this negligence.*" (Emphasis added.) The Restatement of Torts (Second) § 496E states:

> . . . . .
>
> (2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to
>
> . . . . .
>
> (b) exercise or protect a right or privilege of which the defendant has no right to deprive him.

Here, appellant has a right to participate in the varsity football program at Riverside High School. However, the high school's coaches made participation in "jungle football" a virtual prerequisite to playing football in the fall. N.T. 9, 49. Appellant's decision to play "jungle football" was therefore not a free decision: had he failed to play, he would have eliminated his chances of playing varsity football. The majority's discussion of assumption of the risk ignores this aspect of appellant's testimony.

The majority's decision further ignores the fact that once appellant was at the practice sessions, he was hardly in a

position to pick and choose which exercises he was willing to participate in. At the sessions, appellant was subject to the direction of the coaches, and also to pressure from his classmates. Appellant's situation was like that of an adolescent at a summer camp, who may believe that the activities he is to participate in are dangerous, but feels he has no choice because everyone in the camp who is not injured or sick is required to participate. In such a situation, a New York court concluded that the adolescent does not assume the risk of his injury—a holding not affected by the fact that the adolescent could have left the camp and avoided the activity altogether. *Sauer v. Hebrew Inst. of Long Island*, 33 Misc.2d 785, 227 N.Y.S.2d 535 (1962), *reversed on other grounds*, 17 A.D.2d 245, 233 N.Y.S.2d 1008 (1962).

Finally, there is another aspect of the practice sessions, also ignored by the majority, that is against a finding that appellant voluntarily assumed the risk of his injury. The coaches were, above all, teachers of the football players. The players, we must remember, were not professional athletes; they were high school students, learning not only a game but sportsmanship and team play as part of their education. One may be sure that the players looked to their coaches for superior knowledge and training, and reposed a great deal of trust in them. In a very real sense, the players surrendered their judgment to their coaches, must as an inexperienced employee may be said to surrender his judgment to his more experienced employer or co-worker who assures him that a job the employee believes dangerous is, in fact, safe. If the employee proceeds to do the job on the basis of the assurance of safety and is injured, Prosser points out that the employee may not be said to have assumed the risk of his injury, for he has in effect "surrendered his better judgment." Prosser, *The Law of Torts* § 68 (4th ed. 1971); *see Ohmanns v. Driver*, 252 Iowa 1066, 109 N.W.2d 446 (1961); *Brown v. Lennane*, 155 Mich. 686, 118 N.W. 581 (1908); *Manks v. Moore*, 108 Minn. 284, 122 N.W. 5 (1909). Unless the risks confronting the employee are so obvious and extreme that he should not have relied on the assurance of

safety, *Rohrabacker v. Woodward*, 124 Mich. 125, 82 N.W. 797 (1900), the employee may recover. *See Ohmanns v. Driver, supra* ; *Brown v. Lennane, supra* ; *Manks v. Moore, supra.*

Here, although the coaches made no explicit promises that the practice sessions they conducted would be safe, the players had a right to rely on them to minimize the risks involved, consistent with the purposes of the sessions. Instead, the coaches directed appellant and the other players to participate in a game that had risks well beyond either conventional or touch football. As one court has put it, a participant in a sporting event may assume the risks involved as long as the players play by the rules, *Franks v. Smith*, 251 Or. 98, 444 P.2d 954 (1968); here, so far as body contact was concerned, the game appellant and the other players participated in had no rules. Moreover, as another court has held, a wrestler does not assume the risk of an injury that occurs when the referee supervising the match is momentarily distracted. *Carabba v. Anacortes School District No. 103, supra.* Here, the coaches were not momentarily distracted from supervising the game; they did not supervise the game at all because they themselves were participating in it.

The majority suggests that appellant's injury "could have occurred just as easily in a game of 'tackle football.'" Slip op. at 1038. This suggestion is still another manifestation of the majority's failure to view the case in a light most favorable to appellant. The foundation of appellant's case is the argument that the coaches were negligent in directing their charges to play "jungle football" without protective equipment. Given the testimony as to the frequency of body blocking and tackling in "jungle football," a reasonable jury could have found that a helmet equipped with a face mask would have prevented appellant's injury and was an item of protective equipment that coaches acting with a proper consideration of their charges' safety should have provided. The majority's suggestion that even with a helmet the injury could "easily" have occurred fails to give

appellant the benefit of the rule of law expressed in section 442 of the Restatement of Torts (Second):

> Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, . . .

-2-

The premise of the majority's discussion of the lower court's discretion in admitting expert testimony is that appellant's expert witness, Frank Cipriani, was called to describe the game of touch football. Thus, the majority says: ". . . it is obvious that there was no need of expert testimony. It is certainly within the ability of the average person to understand the game of touch football as described in the testimony." Slip op. at 1039. This is a misconception that results from the majority's mistaken belief that "jungle football" is no different than touch football.

Cipriani was not called to describe the game of touch football. He was called to testify that the coaches of the Riverside High School football team were not conducting summer football practice sessions in conformity with the safety standards maintained at other Pennsylvania high schools. He was also called to testify that the practice sessions were in violation of the rules promulgated by the Western Pennsylvania Interscholastic Athletic League. By not allowing this testimony, the lower court improperly restricted appellant in his attempt to prove the alleged negligence of the coaches.

In *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 338, 319 A.2d 914, 924 (1974), the Supreme Court noted that "[t]he standard of qualification [of an expert witness] is a liberal one: 'If a witness "has any reasonable pretension to specialize knowledge on the subject under investigation he may testify, and the weight to be given to his evidence is for the jury: [citations omitted]. . . ." *McCullough v. Holland Furnace Co.*, 293 Pa. 45, 49, 141 A. 631 (1928).' *Moodie v.*

*Westinghouse Electric Corp.,* 367 Pa. 493, 501, 80 A.2d 734 (1951)." Here, Cipriani's testimony as to the safety standards appropriate to high school summer football practice sessions was based on specialized knowledge relevant to the question of whether the Riverside coaches were negligent in their conduct of the practice session during which appellant was hurt. *See Sweeney v. Blue Anchor Bev. Co.,* 325 Pa. 216, 189 A. 331 (1937) (expert witness, if properly qualified, may testify as to whether common usage of business has been adhered to by defendant). The jury should therefore have had the opportunity to hear Cipriani's testimony.

Had the lower court allowed Cipriani to testify, I believe it would have had a great deal more difficulty in concluding as a matter of law that appellant assumed the risk of his injury and that the coaches were not negligent in their conduct of the practice session. Although athletes have been held to have assumed the ordinary and foreseeable risks of their particular sports, *see Podvin v. Somerton Springs Swim Club, Inc.,* 406 Pa. 384, 178 A.2d 615 (1962); *Oberheim v. Pennsylvania Sports and Enterprises, Inc.,* 358 Pa. 62, 55 A.2d 766 (1947), they have not been held to have assumed risks not inherent in their sports but the result of the negligence or recklessness of other participants or supervisors of the sports. *See Bourque v. Duplechin,* La.App., 331 So.2d 40 (1976); *Jackson et al. v. Livingston Country Club, Inc., et al.,* 55 A.D.2d 1045 (N.Y.1977); *Jenks v. McGranaghan,* 32 A.D.2d 989 (N.Y.1969); *Whipple v. Salvation Army,* 261 Or. 453, 495 P.2d 739 (1971); *Carabba v. Anacortes School District No. 103,* 72 Wash.2d 939, 435 P.2d 936 (1967); *Wood et al. v. Postelthwaite et al.,* 6 Wash.App. 885, 496 P.2d 988, (1972) *affirmed,* 82 Wash.2d 387, 510 P.2d 1109 (1973). The present case is a good example of this distinction, for here appellant was injured while playing an unorthodox and dangerous form of football that carried risks not inherent in more conventional versions of the game.

I therefore conclude that the lower court erred in holding that as a matter of law, appellant voluntarily assumed the risks of the dangerous game he was negligently instructed

to participate in. The order refusing to take off the nonsuit should be reversed and the case remanded for trial consistent with this opinion.