450 A.2d 740

**Martin J. BRENNAN, Larry L. Murphy and Frederick H. Stierheim, Appellants,**

v.

**REED, SMITH, SHAW & McCLAY.**

Superior Court of Pennsylvania.

Argued Feb. 10, 1981.

Decided July 2, 1982.

C. William Berger, Pittsburgh, for appellants.

Frederick N. Egler, Pittsburgh, for appellees.

Before CERCONE, President Judge, and JOHNSON and SHERTZ, JJ.

CERCONE, President Judge:

This is an appeal from a judgment of compulsory non-suit entered in favor of defendant, Reed, Smith, Shaw & McClay, at the close of the plaintiffs' case. The plaintiffs, Brennan, Murphy and Stierheim, filed a timely motion to remove or take off the non-suit which was denied and this appeal followed. Appellants contend that the non-suit was improperly granted because their suit in trespass and assumpsit against their former attorney for alleged malpractice in

causing or failing to prevent their violation of the Pennsylvania Securities Act is a valid and proper action at law.

■ In reviewing the entry of a compulsory non-suit, it is well established that the non-moving party is entitled to a favorable view of the evidence and all reasonable inferences arising therefrom. That party is to receive the beneficial resolution of any conflicts which may exist in the evidence and a non-suit should be awarded only in clear cases. *Scott v. Purcell,* 490 Pa. 109, 415 A.2d 56 (1980), *Kardibin v. Associated Hardware,* 284 Pa. Superior Ct. 586, 426 A.2d 649 (1981); *Rutter v. Northeastern Beaver County School Dist.,* 283 Pa. Superior Ct. 155, 423 A.2d 1035 (1980) *rev'd on other grounds,* 496 Pa. 590, 437 A.2d 1198 (1981). This will be kept in mind as we recount the evidence in the present case.

The record indicates that appellants Brennan and Murphy obtained lease options on oil and gas properties in Bradford Field during the spring of 1972 for the purpose of engaging in the exploration and production of oil and gas. They intended to finance drilling on these leases by selling one-eighth interests in individual wells to limited partners, and to form a general partnership to conduct the drilling operations. To implement their desires, they met with attorney William H. Powderly, III, a partner in the law firm of Reed, Smith, Shaw & McClay, in May of 1972. Attorney Powderly represented himself as being knowledgeable in this area of the law. He agreed to represent Brennan and Murphy as general counsel and to prepare the necessary documents for forming their partnership. Also at that initial meeting, attorney Powderly was given a limited partnership agreement form which Brennan and Murphy had copied from an oil and gas journal. They instructed attorney Powderly to review the agreement form to determine whether it was suitable to effectuate the desired business purpose, to make whatever changes he saw fit, and to make sure he kept them "out of trouble with the Securities Commission."

Later that month, Brennan and Murphy returned to attorney Powderly's office and executed the general partnership agreement that Powderly had prepared in the name of

Kaylar Development. At that meeting, the limited partnership agreement form that had been submitted to attorney Powderly was returned to Murphy and Brennan. Attorney Powderly told them that the agreement form, with the changes he had made, would adequately fulfill their needs. At that time, attorney Powderly was informed that Brennan was going right out to sell wells, and the first one-eighth limited partnership interest was in fact sold on June 10, 1972.

Attorney Powderly continued to represent Brennan and Murphy, trading as Kaylar Development Company, throughout the remainder of 1972, and Reed, Smith, Shaw and McClay billed that partnership for his legal services. Numerous fractional interests in several wells were sold to limited partners during this period. Also around this time, attorney Powderly attended a dinner meeting of a large group of then present and prospective investors in these limited partnerships and addressed the group on the tax advantage of their participation.

In January, 1973, attorney Powderly incorporated Kaylar Development and arranged for the transfer of the partnership's assets to the corporation. Appellant Stierheim, who had previously helped in the sale of the limited partnership interests, now became a stockholder in the newly formed corporation. Through this corporation, all three appellants, Brennan, Murphy and Stierheim, continued selling limited partnership interests in new wells. Attorney Powderly was kept advised of the corporation's activities and continued to act as its counsel and bill the corporation for his services. He was, therefore, aware that the limited partnership agreements were still being used.

In 1974, Kayler ran into financial difficulties and entered into bankruptcy. At that time, several purchasers of fractional interests in the oil and gas wells brought suit against appellants on the ground that those sales were in violation

of Federal Securities Laws.[1] Additionally, the Commonwealth of Pennsylvania issued a rule against appellants to show cause why they should not be held in violation of the Pennsylvania Securities Act. After a hearing, the Pennsylvania Securities Commission issued Findings of Fact and Conclusions of Law which read as follows:

1. In offering and selling the limited partnership interests named in the transcript prior to December 31, 1972, Respondents violated Section 3(a) of the 1941 Act in that they offered and sold securities in the Commonwealth of Pennsylvania without registering as a dealer and no exemption from registration was available under the 1941 Act.

2. In offering and selling the above-described securities prior to December 31, 1972, Respondents violated Section 13(c) of the 1941 Act in that they failed to file with the Commission a notice to sell the above-described securities.

3. Respondent, Frederick H. Stierheim, violated Regulation 1510 of the Commission promulgated under the 1941 Act in that he offered and sold the above-described securities without being registered as a salesman in connection therewith.

4. In offering and selling the limited partnership interests named in the transcript on and after January 1, 1973, in the Commonwealth of Pennsylvania, Respondents violated Section 201 of the 1972 Act in that the securities were not registered under the 1972 Act nor were the securities or the transactions involving their offer and sale exempt from such registration.

5. In offering and selling the above-described securities on and after January 1, 1973, Respondents violated Section 401 of the 1972 Act in that they offered and sold securities in the Commonwealth of Pennsylvania without disclosing the following material facts to offerees and purchasers of said securities.

1. Appellants aver in their complaint that these four federal court actions were settled for a specific sum. The only evidence admitted at trial in this regard, however, is simply that the suits were filed.

a. That the securities were being offered and sold in violation of the registration provisions of the 1972 Act.

b. That there were substantial material transactions with management.

c. The financial condition of Kaylar Development Corporation (formerly Kaylar Development Company), the general partner in all of [the] limited partnership interests offered and sold.

Pursuant to these findings of fact and conclusions of law, the Commission entered the following order:

1. The Respondents are neither directly nor indirectly to participate in the securities industry in any manner whatsoever for a period of three (3) years from the date of this Order. However, this sanction will be in effect only until December 1, 1979 provided that affidavits are received by the Commission from the Respondents stating that they have not engaged in the offer or sale of any securities during the period December 1, 1976 through December 1, 1978.

2. Kaylar and the Respondents are jointly and severally liable for the costs of the investigation conducted in this matter in the amount of $5,077.36.

This suit was subsequently commenced by appellants to recover damages for the alleged legal malpractice of attorney Powderly in causing them to violate the Securities laws thereby subjecting them to liability to their investors and sanctions by the Securities Commission. After the appellants presented their case on liability to the jury, the appellee law firm made a motion for compulsory non-suit. After hearing argument on the motion, the lower court entered a judgment of compulsory non-suit because it held that appellants' claim was in reality one for indemnity and restitution which is prohibited by both the Pennsylvania and Federal Securities Acts. This decision to enter the judgment of non-suit was made despite the lower court's finding that "[t]he evidence of the plaintiffs and their expert supports a finding that Powderly did not advise the plaintiffs that the limited partnership agreements which were being used to

obtain money from investors were securities and subject, (1) in Pennsylvania to the sellers of securities under the Pennsylvania Securities Act of 1941 to become registered either as brokers or salesmen of securities or the exemptions from registration; (2) in Pennsylvania under the Pennsylvania Securities Act of 1972, the necessity of registration of the limited partnerships and requisite disclosures or the exemptions from registration; (3) under the Federal Securities Act, the necessity of registration of the limited partnerships and disclosures or the exemptions from registration." This appeal followed.

 In their brief, appellants quite aptly argue that the Securities laws and their underlying policies in no way preclude the instant suit for legal malpractice. Indeed, the simple fact that this is a legal malpractice action brought against an allegedly negligent attorney helps greatly in reaching the core of this controversy. The appellee law firm, however, contends that this is in reality a suit for indemnity, in which case recovery would be denied because appellants have already been held to have violated the anti-fraud provisions of the Pennsylvania Securities Act. 70 Pa.P.S. §§ 1–101 to 1–704 (Purdons Supp., 1981). In support of this position, the appellee law firm is quick to note that it is the expressed intent of the legislature that the Pennsylvania Act "shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact the 'Uniform Securities Act' and to coordinate the interpretation and administration of this act with related Federal regulation." *Id.* at § 1–703(a). Their line of argument is concluded with citation of a long list of federal cases which deny indemnity to those parties who are at least as culpable as the party from whom indemnity is sought.[2]

---

**2.** This argument is based on the notion that "one cannot insure himself against his own reckless, wilful or criminal conduct." *Globus v. Law Research Service, Inc.,* 418 F.2d at 1288–89. Thus, it must be shown that the person seeking indemnification was not guilty of a knowing and wilful violation of the act, and when there are multiple violations "our problem is to determine whether liability under each and every one of these provisions [violated] presupposes

*See, e.g., Globus v. Law Research Service, Inc.,* 418 F.2d 1276 (2nd Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *Heizer Corp. v. Ross,* 601 F.2d 330 (7th Cir. 1979); *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,* 378 F.Supp. 112 (S.D.N.Y.1974), *aff'd. in part,* 540 F.2d 27 (2nd Cir. 1976); *Marrero, IV v. Abraham,* 473 F.Supp. 1271 (E.D.La.1979); *Wassel v. Eglowsky,* 399 F.Supp. 1330, 1365–1366 (D.Md.1975), *aff'd.,* 542 F.2d 1235 (4th Cir. 1976); *McLean v. Alexander,* 449 F.Supp. 1251 (D.Del.1978); *Odette v. Shearson, Hammill & Co., Inc.,* 394 F.Supp. 946 (S.D.N.Y.1975); *Gould v. American-Hawaiian Steamship Co.,* 387 F.Supp. 163 (D.Del.1974), *vacated on other grounds,* 535 F.2d 761 (3d Cir. 1976); *Alexander & Baldwin, Inc. v. Peat, Marwick, Mitchell & Co.,* 385 F.Supp. 230 (S.D.N.Y.1974).

While it is true that these federal court cases do not allow indemnity to those *in pari delicto,* the right of contribution has been routinely applied in such situations. *Id. See also Laventhol, Krekstein, Horwath & Horwath v. Horwitch,* 637 F.2d 672 (9th Cir. 1980). The rationale for this difference being that the federal policy of deterring violations of the Securities Act is not offended by the right of contribution, as it is by indemnity. As one court explains:

a finding of knowing misrepresentation or reckless disregard for the truth." *Odette v. Shearson, Hammill & Co., Inc.,* 394 F.Supp. at 955. Under our Pennsylvania act, it is envisioned that contribution be allowed unless a wilful violator is seeking it from one merely guilty of a negligent violation. 70 Pa.P.S. § 1–503(b). Applying this to a multiple violation situation, the requisite wilfull-negligent relationship must be present with respect to each and every one of the violations. *See Odette, supra.* In the present case, the main violation for which appellants were sued and prosecuted (i.e. failure to register) does not necessarily involve wilful or reckless conduct. *See* 70 Pa.P.S. § 1–201. This the appellee law firm disregards in an attempt to emphasize the violation of the failure to disclose provisions which involve proof of *scienter. See* 70 Pa.P.S. § 1–401. What the appellee further overlooks here is that if the attorney was jointly liable with appellants under this provision requiring proof of *scienter,* then the attorney and his firm cannot be deemed merely negligent violators which is required if they are to successfully defend against the appellants' asserted right of contribution. Thus, our Pennsylvania Securities Act allows for the right of contribution among joint violators of either of these provisions.

Contribution distributes the amount of damage sustained by the victim of a tort among the tortfeasors by requiring each to contribute proportionately to the total damages assessed. Indemnity shifts the entire loss from one tortfeasor to another who, by express or implied contract, is deemed responsible for making the full payment. 1 Dooley, Modern Tort Law § 26.01, at 538 (1977).

. . . . .

The policy underlying the securities laws is reinforced by applying contribution. By apportioning the loss among joint wrongdoers the deterrent effect of the judgment is felt by all culpable parties and the protected investor class has available to it a broader source of reimbursement.

*Heizer Corp. v. Ross,* 601 F.2d at 331–32.

Although the appellee law firm recognizes that contribution can be recovered by one *in pari delicto,* it persists with its contention that contribution should not be allowed instantly because the appellants did not ask for that form of relief in their complaint, and further because they should not now be allowed to change their cause of action. In *Odette v. Shearson, Hammill & Co., Inc.,* 394 F.Supp. 946, 958 n. 16 (S.D.N.Y.1975), however, the brokerage company's third party complaint asked only for indemnity, but the court, pursuant to Fed.R.Civ.P. 54(c), awarded the appropriate relief of contribution even though it had not been requested in the pleadings. Thus, in the interest of uniformity, we do not find appellee's argument to be at all convincing in this regard. See Pa.R.Civ.P. 1528.

■ Although appellants contend in their brief that at the very least they are entitled to recover contribution if this court should deem their cause of action to be one in the nature of indemnity and contribution, we need not fully address this issue except as it tangentially effects our discussion of appellants' main contention concerning their characterization of this cause of action. The appellants' complaint asks for *neither* indemnity *nor* contribution, but rather it seeks damages at law for the tort of legal malpractice. In framing their complaint in this manner, the appellants are

absolutely correct. The federal cases regarding contribution and indemnity have all concerned individuals who are *jointly and severally liable* to the original plaintiff for *violating the securities acts. See Stowell v. Ted S. Finkel Inv. Services, Inc.,* 641 F.2d 323, 325 (5th Cir., 1981); *Messing v. FDI, Inc.,* 439 F.Supp. 776, 780 (D.C.N.J.1977); *deHaas v. Empire Petroleum Company,* 286 F.Supp. 809, 815 (D.Colo.1968), *aff'd in part and rev'd in part on other grounds,* 435 F.2d 1223 (10th Cir. 1970). In *Lasprogata v. Qualls,* 263 Pa. Superior Ct. 174, 397 A.2d 803 (1979), this Court stated that:

> A joint tortfeasor is defined as, '. . . two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.' 12 P.S. § 2082. In Black's Law Dictionary, to be a joint tortfeasor, 'the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury.' 4th Ed. (1968) page 1661. A joint tort is defined as 'where two or more persons owe to another the same duty and by their common neglect such other is injured. . .' *Id.* at 973.

*Id.,* 263 Pa.Superior Ct. at 179 n. 4, 397 A.2d at 805 n. 4. *See also Wade v. S.J. Groves & Sons Co.,* 283 Pa.Superior Ct. 464, 475 n. 8, 424 A.2d 902, 907 n. 8 (1981).

Thus, there must be some action in concert or breach of a common duty which forms a causal link with a single injury to the original plaintiff. *See generally* R. Mallen & V. Levit, *Legal Malpractice,* 162 & 421–23 (1981). More specifically in our situation, the duty and consequent liability must arise by virtue of the provisions of the applicable securities laws.

For example, in *Stowell v. Ted S. Finkel Inv. Services, Inc., supra,* Beck, the defendant issuer, unsuccessfully attempted to get either indemnity or contribution from Beye, one of the plaintiff investors. Beye undertook in writing to act as an expert representative of all the investors on the basis of his knowledge and expertise in tax and business matters. In affirming the dismissal of Beck's counterclaim, the Seventh Circuit stated:

Beck seeks indemnity but fails to show the existence of any express or implied contract for indemnity or any duty imposed by law giving rise to a basis for indemnity. He does not show what duty Beye owed him, how it was breached, and most importantly, how a breach of the duty injured him. Even if Beye did breach some duty, it was a duty owed to the plaintiffs and not to Beck. Moreover, Beye's alleged failure to perform his duty as Offeree's Representative is simply not related to the acts for which Beck is being sued—fraud and failure to register under applicable securities laws. . . .

Beck also seeks contribution in the event he is found liable. Contribution is available from joint securities tortfeasors under the federal securities laws for securities violations, *Heizer, supra,* and *Odette v. Shearson, Hammill & Co., Inc.,* 394 F.Supp. 946, 958 (S.D.N.Y.1975). Three sections of the Securities Acts so provide. 1933 Act § 11(f), 15 U.S.C.A. 77k(f), 1934 Act §§ 9(e) and 18(b), 15 U.S.C.A. § 78i(e) and 78r(b). However, under the facts alleged by Beck it is clear that Beye was not a joint securities act wrongdoer with Beck in Beck's alleged violations of the securities laws. It is not even suggested that Beye violated any securities law. Beye's alleged negligence, if any, had no causal connection with Beck's alleged violations, and occurred subsequent in time.

641 F.2d at 325.

This type of analysis has been utilized in Pennsylvania cases which have held that an action against a negligent attorney is separate, distinct and independent from the underlying cause of action on which he was retained to act in his client's behalf. These cases have, therefore, held that the underlying cause of action is not the proper subject matter for a third party complaint brought by the negligent attorney who was originally sued by his client. *See Schladensky v. Ellis,* 442 Pa. 471, 275 A.2d 663 (1971); *American Metal Fabricators Co. v. Goldman,* 227 Pa. Superior Ct. 284, 323 A.2d 891 (1974). *See also* Mallen & Levit, *supra* at 421–23. In *Schladensky,* the Supreme Court of Pennsylvania held

that "the actions of the plaintiffs against [their attorney] are based on his failure to exercise reasonable care and diligence in the use of his skill as an attorney, and in the application of his knowledge to his client's cause. [The attorney] does not assert that the additional defendants were responsible for his failures in this regard, or that they in any way hindered or impeded his timely prosecution of the plaintiffs' case against [them]. The negligent conduct asserted by [the attorney] against the additional defendants cannot be equated with that which the plaintiffs assert against him." 442 Pa. at 475, 275 A.2d at 665.

■ Our Pennsylvania Securities Act itself further elucidates the requirement that there be a common duty or liability arising by virtue of violation of the act before the principles of contribution and/or indemnity become applicable. It has a specific section entitled "Joint and several liability; contribution; corporation's right of indemnification" which provides:

(a) Every affiliate of a person liable under section 501 [among other things, providing liability for misstatements or omissions to state a material fact] or 502, [providing liability of issuers to investors for violating the registration requirements] every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employe of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

(b) A corporation which is liable under this act shall have a right of indemnification against any of its affiliates whose wilful violation of any provision of this act gave rise to such liability. All persons civilly liable under

this act shall have a right of contribution against all other persons similarly liable, based upon each person's proportionate share of the total liability, except that no person whose wilful violation of any provision of this act has given rise to any civil liability shall have any right of contribution against any other person guilty merely of a negligent violation.

70 Pa.P.S. § 1–503.

Moreover, in a "Limitation of liability" section, the act states:

Except as explicitly provided in this act, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this act or any rule or order hereunder. Nothing in this act shall limit any liability which might exist by virtue of any other statute or under common law if this act were not in effect.

*Id.* at § 1–506.

The act, therefore, provides for joint and several liability among those primarily and/or secondarily liable under the act, and for the right of contribution between them. The act, however, does not interfere with any independent rights of action that might exist at common law such as a suit for legal malpractice.

█ Thus, consistent with our statutory scheme, there are at least two ways in which an attorney can be held liable for his involvement in a securities deal: he can be liable to his client under common law professional malpractice principles and he can be held liable to an investor as a violator of the Securities Act itself. *See generally* Mallen & Levit, *supra* at 162 & 538–584; D. Stern, *An Attorney's Guide to Malpractice Liability,* 247–306 (1977); Ruder, *Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution,* 120 U.Pa.L.Rev. 597 (1972). When an attorney is sued in such matters, therefore, it is necessary to precisely delineate the legal theory or theories upon which the alleged liability is based.

There is a marked difference between the bases of liability of an attorney to an investor, as opposed to his client, for a securities law violation. The liability to the investor is predicated upon the provisions of the securities laws. The liability to the client is predicated upon legal malpractice in the context of the rules developed concerning professional negligence. In the absence of a statutory provision, contribution, or indemnity, the client must proceed upon the normal tort theories.

Mallen & Levit, *supra,* at 581–82.

In the present case, the underlying theory of liability which was asserted in the pleadings and supported by the evidence was one of legal malpractice, and as such, this case should be decided upon common law negligence theories.

In support of the lower court's contrary conclusion, the appellee law firm keys upon the loosely worded characterization of this action as one for indemnity which was made by appellants' counsel in his opening statement to the jury. We do not, however, attach any great significance to this isolated misnomer, but rather we must view the record as a whole in making such an important determination. When we do so, all indications point to the fact that appellants were suing their counsel for his failure to advise them *in a legal capacity* of the requirement that they register and make the requisite disclosures. This was so despite their explicit instructions that Powderly was to "keep them out of trouble with the Securities Commission." Nowhere in the record is there any allegation or attempt to prove that the appellee law firm was either primarily or secondarily liable for violating any provision of the securities act. This case, therefore, clearly involves an attorney's execution of his professional duties owed to his client and not his conduct as a principal, "affiliate", "controlling person", "aider and abettor," or "material participant" in the failure to register and make the requisite disclosures. As such, professional malpractice principles should solely govern this controversy, and we can perceive no reason why public policy should require otherwise.

■ In fact, when presented with a similar situation, the Supreme Court of Oregon came to the same conclusion. *See Collins v. Fitzwater,* 277 Or. 401, 560 P.2d 1074 (1977). In that case, the corporate attorney-director was sued for failing to advise the issuers that they were required to register under the applicable securities law. The court held that the complaint adequately stated a cause of action for both indemnity and for legal malpractice. As a controlling director, the attorney could be liable as a principal under the act and by virtue of his expertise and knowledge, he was deemed the more culpable party than the non-culpable director who reasonably relied on his attorney's advice. In a professional capacity, the attorney had a duty to provide sound and accurate legal advice or suffer liability for his negligent failure to do so. The *Collins* court, therefore, concluded that:

> As a matter of necessity, laymen who act as corporate directors must often rely upon the expertise and diligence of corporate counsel when intricate legal questions are at issue. When a corporate attorney errs in the performance of his legal duties, we can think of no reason why the layman rather than the attorney should bear the ultimate burden of the error. Therefore, we conclude that public policy does not prohibit a nonculpable director from seeking indemnification from a culpable corporate attorney through a suit for legal malpractice, or otherwise.

*Id.* at 408, 560 P.2d at 1078.

Since Oregon is one of the states which, along with Pennsylvania, has adopted the Uniform Securities Act, we see no reason to differ with the holding in *Collins.*

■ In conclusion, because all of the requisite elements of a *prima facie* case of legal malpractice have been shown in the instant case,[3] we reverse the lower court's order refusing

**3.** The record discloses that the plaintiff appellants put in their case on liability first with damages to be ascertained at a later point in time. And since this case involves a single cause of action for malpractice with many different facets of damages, we are not inclined to hold, as did the lower court, that the *prima facie* element of harm or damage was not shown with respect to that part of the

to take off a compulsory non-suit and award appellants a new trial. *See Schenkel v. Monheit,* 266 Pa.Superior Ct. 396, 405 A.2d 493 (1979).

Reversed and remanded for further proceedings consistent with this opinion.

SHERTZ, J., did not participate in the consideration or decision of this case.

damages arising out of the private causes of action which appellant settled. Instead, we view this matter as one which would and should have been decided in the separate damages portion of the case because the general element of harm on this single cause of action has been shown. In fact, when this question arose and appellants sought to reopen their case to admit the complaint and settlement documents in these cases, the lower court refused the motion because he said the *entire* federal court docket in those cases should have been introduced. Therefore, on remand, the appellants will not be precluded from proving damages with respect to the four federal court suits which they settled.